UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| FRANK COHN, individually and on behalf of a class of all similarly situated persons,<br><br>Plaintiff(s),<br><br>vs.<br><br>RITZ TRANZPORTATION, INC., AWG AMBASSADOR, LLC, ALAN WAXLER and RAYMOND CHENOWETH,<br><br>Defendant(s). | 2:11-cv-01832-JCM-NJK<br><br>**REPORT & RECOMMENDATION** |

Before the court is Defendants' Motion to Compel Arbitration and Strike Class/Collective Claims (Docket No. 97). The Court has considered Defendants' Motion (Docket No. 97), Plaintiff's Response (Docket No. 101), and Defendants' Reply, (Docket No. 105). The Court finds this motion appropriately resolved without oral argument. *See* Local Rule 78-2. For the reasons discussed below, it is the recommendation of the undersigned United States Magistrate Judge that Defendants' motion should be GRANTED.

**BACKGROUND**

**A.     Procedural Background**

On October 26, 2011, Plaintiff filed a class action complaint in the District Court for Clark County, Nevada, for unpaid wages, breach of contract, tortious interference with prospective economic advantage, and conversion. (Docket No. 1-1). Thereafter, on November 15, 2011, Defendants removed the case to federal court. (Docket No. 1). On December 2, 2011, Plaintiff filed a motion for circulation of notice of the pendency of this action pursuant to 29 U.S.C. § 216(b) and for other relief. (Docket No. 6). The Court granted that request on February 10, 2012. (Docket No.

1  19). The parties stipulated that the employees who would receive the notice would have 60 days
2  from the date the notice was mailed to file all consents to join. (Docket No. 29; approved by the
3  Court at Docket No. 34). Subsequently, approximately 66 individuals filed consents to join this
4  lawsuit.

5  On March 9, 2012, Plaintiff filed a motion to amend the complaint. (Docket No. 26). The
6  Court granted Plaintiff's motion to amend and instructed Plaintiff to file its amended complaint on
7  the docket. (Docket Nos. 41 and 43, respectively). Plaintiff's amended complaint, brought on behalf
8  of himself and those similarly situated, alleges violations of the Fair Labor Standards Act, violations
9  of the Nevada Revised Statutes, and breach of contract related claims. (Docket No. 43). The basis
10 of Plaintiff's claims is that he and those similarly situated are owed unpaid overtime and minimum
11 wages. *Id*. Defendants, in their answer to the amended complaint, assert that Plaintiff's claims and
12 the claims of those similarly situated are barred by arbitration agreements. (Docket No. 47,
13 affirmative defense number 22).

14 Subsequently, discovery was extended to October 31, 2012, and then again to March 29,
15 2013. (Docket Nos. 61, and 83, respectively). On March 5, 2013, the parties requested that the Court
16 stay all proceedings so that they could pursue settlement discussions. (Docket No. 85). The Court
17 granted that request (Docket No. 88), and this case was stayed until July 31, 2013. (Docket No. 91).
18 The parties were not able to reach a settlement. On August 5, 2013, the Court entered a new
19 scheduling order extending discovery until November 21, 2013. (Docket No. 93). Thereafter, on
20 September 18, 2013, Defendants filed the instant motion, seeking to compel 33 of the opt-in
21 plaintiffs to arbitrate this matter on the grounds that they signed an arbitration agreement. (Docket
22 No. 97).

23 **B.    Substantive Facts**

24        **1.    General Background**

25 Defendant Ritz Transportation Inc. ("Ritz") was a shuttle transportation company operating
26 in Las Vegas, Nevada, engaged in the business of transporting tourists to and from the airport and
27 hotels. (Docket No. 97, at 3). Alan Waxler Group Charter Services, dba AWG Charter Services, was
28

- 2 -

a charter service operating in Las Vegas, Nevada, engaged in transporting tourists on charters. *Id*.

In June 2010, Ritz entered a management contract with AWG Charter Services where AWG Charter Services managed Ritz's operations but they remained separate employers. *Id*., at 4.

In June 2011, Ritz was purchased by AWG Charter Services and merged to create a new company, Defendant AWG Ambassador. *Id*.

In approximately September 2011, Defendant AWG Ambassador issued a Company Handbook which contained an arbitration agreement. *Id*.

**2.     Arbitration Agreement**

Of the 66 individuals that joined this lawsuit, 33 signed the Arbitration Agreement (the "Opt-In Plaintiffs"). (*See* Docket No. 97-4). Part 1 of the Arbitration Agreement states:

> **<u>Agreement to Arbitrate All Disputes.</u>** This Agreement is governed by the federal Arbitration Act, 9 U.S.C. Sec. 1 et seq., and evidences a transaction involving interstate commerce. This agreement applies to any dispute arising out of or related to your employment with AWG Ambassador, LLC, or one of its affiliates, subsidiaries or parent companies ("Company") or termination of employment and obligates both you and the Company to submit such matters to arbitration. . . . This Agreement is intended to apply to the resolution of past, present and future disputes that otherwise would be resolved in a court of law and requires that all such disputes be resolved only by an arbitrator through final and binding arbitration and not by way of court or jury trial, except as otherwise stated in this Agreement.
>
> This Agreement applies, without limitation, to disputes regarding the employment relationship . . . Fair Labor Standards Act . . . and state statutes, if any, addressing the same or similar subject matters, and all other state statutory and common law claims.

*Id*.

With regard to class actions, the Arbitration Agreement states:

> **You and the Company agree there will be no right or authority for any dispute to be brought, heard or arbitrated as a class or collective action, or as a class member in any purported class or collective proceeding ("Class Action Waiver").** Disputes regarding the validity and enforceability of the Class Action Waiver may be resolved only by a civil court of competent jurisdiction and not by an arbitrator.
>
> The Class Action Waiver, and any other provision of this Agreement, shall be severable in any case in which the dispute is filed as an individual action and severance is necessary to ensure that the individual action proceeds to arbitration.

*Id*., at 4 (emphasis in original).

The AWG Ambassador drivers received and signed the following separate acknowledgment and agreement upon receipt of the Company Handbook:

- 3 -

> I have read and understand the foregoing mandatory and binding Arbitration Agreement. I understand that the Arbitration Agreement will continue to apply even after my separation from the Company. I also understand that the Arbitration Agreement cannot be modified by any oral agreement or representation but can be modified only in writing. I understand and agree that nothing in this Arbitration Agreement alters my at-will employment relationship with the Company. Lastly, I understand the Arbitration Agreement is a condition of employment with the Company and that by accepting employment or continuing employment with the Company, the Company and I will be bound by the Arbitration Agreement.

*Id.*, at 7.

Thirty-three individuals signed the Arbitration Agreement and opted-in to the instant case. (Docket No 97, at 5-6). Of those 33 individuals, at least six signed after the Complaint was filed in this matter, but before they consented to joining the case. (Docket No. 101, at 16-17).

## ARGUMENTS

**A.    Defendants' Argument**

**1.    Plaintiff's Claims Fall Under the Arbitration Agreement**

Defendants argue that all the claims in the Complaint relate to Opt-In Plaintiffs' employment with Defendants and, therefore, they are within the scope of the Arbitration Agreement. (Docket No. 97, at 7). Further, the Agreement expressly covers claims arising under the FLSA or state wage and hour law. *Id*. Accordingly, Defendants assert, the claims of the Opt-In Plaintiffs who signed the Arbitration Agreement are clearly arbitrable. *Id*.

**2.    The Arbitration Agreement is Enforceable**

Defendants emphasize that the Federal Arbitration Act ("FAA"), 9 U.S.C. § 3, reflects a "liberal federal policy favoring arbitration agreements." *Id. (quoting Perry v. Thomas*, 482 U.S. 483, 489 (1987)). Accordingly, Defendants assert that the Court must resolve any doubts regarding the scope and enforceability of the Agreement in favor of arbitration. *Id.*, at 8 (*citing Moses H Cone Memorial Hasp. v. 26 Mercury Construction Corp.*, 460 U.S. 1, 23 (1983), *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 852-83 (1960), *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985)).

Regarding Plaintiff's state law claims, Defendants argue that the FAA preempts all otherwise applicable or conflicting state laws. *Id. (citing Preston v. Ferrer*, 552 U.S. 346, 256-57 (2008)). Therefore, states cannot create special exceptions to the enforcement of arbitration agreements

- 4 -

governed by the FAA. *Id.* Moreover, Defendants note that Plaintiff bears the burden of proving a legislative intent to preclude arbitration of the claims asserted. *Id*. (*citing Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991).

In an effort to preempt Plaintiff's arguments regarding enforceability, Defendants assert that Plaintiff may attempt to rely on a recent decision from the National Labor Relations Board ("NLRB"), *D.R. Horton, Inc,* 357 NLRB No. 184 (January 3, 2012). Defendants argue that the Court should not follow that case, because it "has been rejected by most courts, including the Ninth Circuit." (Docket No. 97, at 11 (*citing Richards v. Ernst & Young, LLP*, 734 F.3d 871, 873 (9th Cir. 2013) *opinion amended and superseded,* 2013 WL 6405045 (9th Cir. Dec. 9, 2013)). Further, the United States Supreme Court recently held that the FAA does not allow courts to invalidate a class waiver because the plaintiff's costs of individually arbitrating a federal statutory claim exceeds the potential recovery. *Id*. (*citing Am. Exp. Co. v. Italian Colors Rest.*, 133 S. Ct. 2304, 2306 (2013)). Accordingly, Defendants argue that the Opt-In Plaintiffs who signed the class action waiver have agreed to waive any claims as a class and must proceed on an individual basis. *Id*.

### 3. The Arbitration Agreement is Valid Under Nevada Law

Next, Defendants assert that under the Uniform Arbitration Act of 2000 ("UAA") and Nevada case law interpreting the UAA, the claims of the individuals who signed the arbitration agreements are subject to a binding arbitration agreement. *Id*., at 9 (*citing* NRS 38.206 *et seq*.). Defendants cite to *Phillips v. Parker*, 106 Nev. 415, 417 (1990), for the notion that when an agreement to arbitrate exists, there is a "presumption of arbitrability." *Id*. at 10, (*citing Philips*, 106 Nev. At 417). Defendants argue that the individuals who signed the arbitration agreements cannot overcome the "presumption of arbitrability" because those individuals agreed, as a condition of their employment, that (with few exceptions) they would submit "any dispute arising out of or related to [their] employment with AWG Ambassador, LLC or one of its affiliates, subsidiaries or parent company or termination of employment" to binding arbitration. *Id*. Therefore, Defendants argue, because all the claims in the Complaint are based on the Opt-In Plaintiffs' employment with Defendants, Plaintiffs must arbitrate those claims. *Id*.

. . .

- 5 -

**4.     Defendants Did Not Waive Arbitration**

In another effort to predict Plaintiff's arguments, Defendants assert that they did not waive their right to arbitration. (Docket No. 97, at 12). Defendants point out that in their Answer they set forth an affirmative defense that Plaintiff's claims were barred by arbitration. *Id*. (*citing* Docket No. 47). Additionally, Defendants assert that they: (1) produced the Arbitration Agreement and copies of the agreements signed by the Opt-In Plaintiffs who joined the lawsuit as part of their disclosures; (2) have not engaged in any acts inconsistent with arbitration; and (3) have not deposed or propounded written discovery on any of the Opt-In Plaintiffs who signed arbitration agreements. *Id*. Finally, Defendants argue that the Opt-In Plaintiffs will not be prejudiced if they are compelled to arbitrate their claims. *Id*.

**B.     Plaintiff's Argument**

**1.     The Arbitration Agreement is Procedurally Unconscionable**

In response, Plaintiff argues that the Arbitration Agreement is procedurally unconscionable because it was a non-negotiable condition of employment. (Docket No. 101, at 7). The arbitration clause acknowledgment signed by the Opt-In Plaintiffs states, in part, "Lastly, I understand that the Arbitration Agreement is a condition of employment with the Company." (Docket No. 97-4, at 7). Accordingly, Plaintiff asserts, it was a mandatory and non-negotiable employment arbitration clause and such clauses are procedurally unconscionable under Nevada law. *Id*. Plaintiff relies on *D.R. Horton, Inc. v. Green*, 120 Nev. 549 (2004), *Circuit City Stores, Inc. v. Ahmed*, 283 F.3d 1198, 1200 (9th Cir. 2002), and *Kilgore v. KeyBank, Nat. Ass'n*, 673 F.3d 947, 963-64 (9th Cir. 2012) *on reh'g en banc,* 718 F.3d 1052 (9th Cir. 2013), to support his arguments.

**2.     The Arbitration Agreement is Substantively Unconscionable**

Plaintiff also argues that the Arbitration Agreement is substantively unconscionable, for two reasons: one, it imposes an illusory promise upon Defendants; and two, it imposes an unacceptable cost upon Plaintiffs.

**a.     Illusory Promise**

Plaintiff asserts that because the Arbitration Agreement is part of the employee handbook, it is subject to the "Acknowledgment and Agreement" appearing on page 49 of the employee

handbook. (Docket No. 101, at 9). That acknowledgment states that "the purpose of this handbook is to provide information about AWG Ambassador, LLC Company policies and that the Company policies in the handbook are subject to change by executive management at any time." *Id*. The "express language" of the Acknowledgment and Agreement further states, according to Plaintiff, that the only thing set forth in the handbook, including the arbitration clause, that is not subject to modification at the decision of Defendants, is the employment at will term of the parties' agreement. *Id*. Accordingly, Plaintiff argues, Defendants reserved the right to discontinue the arbitration clause at any time making it a grossly one-sided contract imposed by a party with superior bargaining power. *Id*., at 10. This, Plaintiff asserts, shows that the arbitration agreement was an illusory contract promise. *Id*.

**b.    Unacceptable Costs**

Next, Plaintiff asserts that because the arbitration agreement bestows upon the arbitrator the power to determine what costs and fees of arbitration the plaintiffs must bear, it allows for potentially large arbitration costs. *Id*., at 11. Plaintiff argues that arbitration costs that exceed the costs a party would bear in a conventional lawsuit creates substantive unconscionability. *Id*. (citing *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 90-91 (2000)).

**3.    The Arbitration Agreement is Unenforceable Under the NLRA and the Norris Laguardia Act**

As anticipated by Defendants, Plaintiff relies upon the recent NLRB decision, *D.R. Horton*, for the proposition that an employer cannot enforce a class action waiver in an arbitration agreement. Docket No. 101, at 12 (*citing D.R. Horton*, 357 NLRB No. 184). In that decision, the NLRB found that an employee's right under the NLRA to pursue class action claims is a substantive right conferred by a federal statute. *Id*. Plaintiff acknowledges that certain courts have declined to follow *D.R. Horton*, but he asserts that *D.R. Horton* "is the law of the land" until it is overturned, and the fact that certain courts have declined to follow it "is irrelevant." *Id*., at 14.

Plaintiff further asserts that the Ninth Circuit case, *Richards v. Ernst & Young, LLP*, cited by Defendants, does not reject *D.R. Horton*. *Id*., at 13. According to Plaintiff, the language cited by Defendants in *Richards* is only *dicta* and the Ninth Circuit expressly refused to reach the issue of

- 7 -

1 whether to accept or reject *D.R. Horton*. *Id*., at 15 (*citing D.R. Horton*, 357 NLRB No. 184).

### 4. Arbitration of Claims Against Defendants Waxler and Chenoweth is Precluded by the Arbitration Clause's Express Language

Plaintiff argues that even if the Court compels arbitration against the subject plaintiffs, their claims against the individual defendants, Raymond Chenoweth and Alan Waxler, are not subject to arbitration. *Id*., at 15. Plaintiff asserts that because the individual defendants are not signatories to the arbitration agreement, nor does the agreement cover those defendants, the claims against the individual defendants must continue in this Court. *Id*., at 16.

### 5. Arbitration Agreements Secured After the Class Action Commenced Are Void

At least six of the subject plaintiffs signed the arbitration agreement after the commencement of this litigation. *Id*. Therefore, according to Plaintiff, Defendants effectively solicited "exclusions" from class members in this case. *Id*. Plaintiff argues that such solicitation has been found to be improper under Rule 23. *Id*., at 17. Accordingly, Plaintiffs assert that if the Court grants Defendants' motion, it should be denied as to the six individuals who signed the arbitration agreement after the present litigation commenced.

**C. Defendants' Response**

### 1. Plaintiff Conceded that the Arbitration Agreement Encompasses all of His Claims

In Reply, Defendants point out that Plaintiff did not dispute that the Arbitration Agreement covers all the claims in this action. (Docket No. 105, at 2).

### 2. The FAA Mandates the Claims Should be Arbitrated

Defendants reiterate that the FAA reflects a liberal federal policy favoring arbitration agreements and, additionally, that the Court must resolve any doubts regarding the scope and enforceability of the Agreement in favor of arbitration. *Id*.

### 3. The Arbitration Agreement is not Procedurally or Substantively Unconscionable

Defendants note that both procedural and substantive unconscionability must be present for a court to decline to enforce a contractual clause. *Id*., at 3 (*citing Burch v. Second Judicial Dist. Court of State ex rel. Cnty. of Washoe*, 118 Nev. 438 (2002)).

### a. Procedural Unconscionability

Defendants argue that the arbitration agreement is not procedurally unconscionable for two reasons. First, the fact that the agreement was a mandatory condition of employment does not render it unconscionable and, additionally, Plaintiff has not cited to any authority for such a proposition. (Docket No. 105, at 4). Second, Defendants assert that the case relied upon by Plaintiff, *D.R. Horton, Inc. v. Green*, stands for the proposition that arbitration provisions are procedurally unconscionable if they are inconspicuous and do not put the party on notice that he or she is waiving important rights under Nevada law. *Id*. (*citing D.R. Horton, Inc. v. Green*, 120 Nev. 549 (2004), 120 Nev. 549 (2004)).  Here, the arbitration agreement was a three-page document, set off from the rest of the text and clearly labeled "**ARBITRATION AGREEMENT**" in bold and underlined font. *Id*. Similarly, the "Class Action Waiver" was written in bold and clearly stated that the employee agreed to waive any right to bring a dispute as a "class or collective action." *Id*.  Therefore, Defendants assert, the individuals who signed the arbitration agreement clearly agreed that arbitrating claims was a condition of employment and that by accepting employment, he or she was bound by the agreement. *Id*.

### b. Substantive Unconscionability

Defendants refute both of Plaintiff's arguments for why the Arbitration Agreement is substantively unconscionable. First, they argue that the Arbitration Agreement applies equally to all 33 Opt-In Plaintiffs who signed the agreement and to Defendants. *Id*., at 5. They note that, under the agreement, the arbitrator is mutually selected by the parties, either party can demand arbitration, and both parties have the right to conduct discovery. *Id*.  Further, Defendants argue, courts have specifically rejected the argument that an arbitration agreement is unconscionable merely because it is in a handbook which can be modified at the sole discretion of the company. *Id*., (*citing Serpa v. California Sur. Investigations, Inc.*, 215 Cal. App. 4th 695 (Cal. Ct. App. 2013); and *24 Hour Fitness, Inc. v. Superior Court*, 66 Cal. App. 4th 1199 (1998)).

Second, Defendants assert that the Arbitration Agreement does not impose an unacceptable cost upon the 33 Opt-In Plaintiffs. Docket No. 105, at 6. Defendants point out that the Arbitration

- 9 -

1 Agreement clearly states that each party will bear its own attorney fees subject to any remedies to
2 which that party may later be entitled under applicable law. *Id*. Moreover, it states that in all cases
3 where required by law, the company will pay the arbitration fees and costs and, if not required by
4 law, the fees will be allocated. *Id*. The exact same type of cost language, Defendants assert, was
5 found to be not substantively unconscionable by the Ninth Circuit in *Jackson v. Rent-A-Ctr. W., Inc.*,
6 581 F.3d 912 (9th Cir. 2009) *rev'd sub nom. Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63 (2010).
7 *Id*.

### 4. The Class Action Waiver Provision is Lawful

9 Defendants continue to assert that the NLRB decision *D.R. Horton, Inc,* has been rejected
10 by numerous courts. Docket No. 105, at 7. Defendants cite to additional language in *Richards* in
11 which the Ninth Circuit stated that "the only court of appeal, and the overwhelming majority of
12 district courts to have considered the issue have determined that they should not defer to the NLRB's
13 decision in *D.R. Horton* because it conflicts with the explicit pronouncements of the Supreme
14 Court." *Id*. (*citing Richards* 2013 WL 6405045 (9th Cir. Dec. 9, 2013)). Further, Defendants cite
15 to the recent Supreme Court case *Am. Exp. Co. v. Italian Colors Rest.*, 133 S. Ct. 2304 (2013), in
16 which the Supreme Court upheld a class action waiver despite the fact that the plaintiff's costs of
17 individually arbitrating a federal statutory claim exceeded the potential recovery. *Id*.

### 5. The Arbitration Agreement Applies to All Defendants

19 Defendants assert that the Arbitration Agreement applies to all Defendants, including
20 individual Defendants Alan Waxler and Ray Chenoweth. *Id*., at 8. To support this assertion,
21 Defendants argue that because the Complaint alleges that Defendants Alan Waxler and Ray
22 Chenoweth are owners and/or managers who are allegedly liable for paying overtime and breaching
23 contracts, they are agents of the corporate defendants and thus allowed to compel arbitration. *Id*., at
24 9. Defendants cite to a California Supreme Court case in which the court held that individual
25 defendants who were alleged to be managers and agents of the employer were entitled to the benefits
26 of the arbitration agreement between the employer and the plaintiff, even though the individual
27 defendants did not sign the agreement. *Id*. (*discussing Dryer v. Los Angeles Rams*, 40 Cal. 3d 406
28 (1985)).

**6. Arbitration Agreements Signed After the Filing of the Lawsuit are Not Void**

With regard to the six individuals who signed arbitration agreements after the commencement of this lawsuit, Defendants assert that they did not solicit "exclusions." *Id*. Defendants argue that the six individuals signed arbitration agreements before they filed consents to join the lawsuit and, because it is the joinder that triggers the statute of limitations, the six individuals were not part of the lawsuit until they filed their consents to join. *Id*. Moreover, Defendants assert, the cases cited by Plaintiff are inapposite to this case and concern Rule 23 classes where individuals must opt out of the class. *Id*., at 10.

## DISCUSSION

**A.  Federal Arbitration Act**

The Federal Arbitration Act ("FAA") requires courts to compel arbitration of any controversy covered by the terms of a valid written agreement to arbitrate. *Andrus v. D.R. Horton, Inc.*, 2012 WL 5989646, *7 (D. Nev. Nov. 5, 2012) *report and recommendation adopted,* 2012 WL 5989642 (D. Nev. Nov. 29, 2012). The Act leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 220–21 (1985).

Moreover, the FAA is a "liberal federal policy favoring arbitration agreements," and "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H Cone Memorial Hospital v. Mercury Construction Corp*., 460 U.S. 1, 24–25 (1983); *see also Perry v. Thomas*, 482 U.S. 483, 489 (1987)*; United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 852-83 (1960); and *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985). Under the FAA, "once [the Court] is satisfied that an agreement for arbitration has been made and has not been honored," and that the dispute falls within the scope of that agreement, the Court must order arbitration. *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 400 (1967).

Accordingly, in this case, there are two key issues for the court to decide: (1) whether the Arbitration Agreement encompasses Plaintiff's claims, and (2) whether the Arbitration Agreement is enforceable.

**B.     The Arbitration Agreement Encompass Plaintiff's Claims**

Plaintiff does not dispute that the Arbitration Agreement encompasses his claims. (*See* Docket No. 101). Further, the Court finds that the Arbitration Agreement's broad language mandates that the claims of all Plaintiffs who signed it be arbitrated. *See Moses H Cone Memorial*, 460 U.S. at 24–25 (any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration). The Arbitration Agreement specifically states that it "applies to any dispute arising out of or related to your employment with AWG Ambassador, LLC, or one of its affiliates, subsidiaries or parent companies ("Company") or termination of employment" and, additionally, it "applies, without limitation, to disputes regarding the employment relationship . . . Fair Labor Standards Act . . . and state statutes, if any, addressing the same or similar subject matters, and all other state statutory and common law claims. " (Docket No. 97-4, at 3). All of the Opt-In Plaintiffs' claims relate to their employment with Defendants and, thus, their claims fall squarely within the Arbitration Agreement.

**C.     The Arbitration Agreement is Enforceable**

**1.     The Class Action Waiver is Enforceable**

Under the terms of the Arbitration Agreement, "[d]isputes regarding the validity and enforceability of the Class Action Waiver may be resolved only by a civil court of competent jurisdiction and not by an arbitrator." (Docket No. 97-4). Therefore, the determination regarding the enforceability of the class action waiver is specifically excluded from the arbitration agreement, and must be made by the Court.

In making this decion, Plaintiff requests that the Court rely on the NLRB's decision, *D.R. Horton, Inc*. Courts in this district, however, when examining this issue, found that the NLRB's decision, *D.R. Horton, Inc,* although arguably persuasive, is not controlling law. *Andrus,* 2012 WL 5989646 *(citing P\*I\*E Nationwide, Inc.,* 894 F.2d 887, 893 (7th Cir.1990) ("The Board ... still must go to a court of appeals and ask that court to issue an order enforcing the Board's order.")). The Court must examine whether the Arbitration Agreement is enforceable by looking at binding precedent. *Id*. Accordingly, this Court looks to the Ninth Circuit.

In *Richards v. Ernst & Young, LLP.*, the Ninth Circuit noted that *"*two courts of appeals, and the overwhelming majority of the district courts, to have considered the issue have determined that they should not defer to the NLRB's decision in *D.R. Horton* on the ground that it conflicts with the explicit pronouncements of the Supreme Court concerning the policies undergirding the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1–16." *Richards,* 2013 WL 6405045, *2 n.3 (9th Cir. Dec. 9, 2013) (internal citation omitted). Although this discussion was *dicta* in the *Richards* opinion,[1] it was nonetheless instructive as to the current state of the law. The Ninth Circuit found that the "overwhelming majority" of courts declined to follow the NLRB's decision. *See id*. Therefore, because Plaintiff has failed to explain why this Court should not follow the "overwhelming majority" of courts, the Court declines to follow the NLRB's decision. Instead, the Court, relying on the explicit pronouncements of the Supreme Court concerning the policies undergirding the FAA, finds that the class action waiver is not unlawful. *See i.e. Am. Express v. Italian Colors Rest.*, 133 S.Ct. 2304, 2309 (2013) (reiterating that "courts must rigorously enforce arbitration agreements according to their terms").

### 2.     The Arbitration Agreement is Not Unconscionable under Nevada Law

Both procedural and substantive unconscionability must be present in order for a court to exercise its discretion to refuse to enforce a contract or clause as unconscionable. *Burch v. Second Judicial Dist. Court of State ex rel. Cnty. of Washoe*, 118 Nev. 438, 443 (2002). However, less evidence of substantive unconscionability is required in cases involving great procedural unconscionability. *D.R. Horton, Inc. v. Green*, 120 Nev. 549, 553-54 (2004). The reverse is also true. Less evidence of procedural unconscionability is required in cases involving great substantive unconscionability. *Gonski v. Second Judicial District Court*, 245 P.3d 1164, 1169 (Nev. 2010). An arbitration clause is procedurally unconscionable under Nevada law when a party lacks a meaningful opportunity to agree to the clause terms either because of unequal bargaining power, as in an adhesion contract, or because the clause and its effects are not readily ascertainable upon a review

---

[1] The Ninth Circuit declined to make an affirmative decision on the issue in *Richards*, due to the fact that it was not raised until the appeal. *Richards,* 2013 WL 6405045, *2 n.3.

of the contract. *D.R. Horton, Inc. v. Green*, 120 Nev. 549, 553-54 (2004). Substantive unconscionability "focuses on the one-sidedness of the contract terms." *Id*. The burden of demonstrating procedural and substantive unconscionability of the Arbitration Agreement is on Plaintiff. *See Andrus,* 2012 WL 5989646 *(citing L & M Creations,* 2011 WL 1103636, *6).

### a. Procedurally Unconscionability

To determine whether an agreement is procedurally unconscionable, the Court must evaluate how the parties negotiated the contract and the circumstances of the parties at that time. *Samuel, Son & Co. Inc. v. Sierra Stainless, Inc.*, 2010 WL 4237993 (D. Nev. Oct. 19, 2010) (*citing Circuit City Stores, Inc. v. Mantor,* 335 F.3d 1101, 1106 (9th Cir. 2003) (interpreting Nevada law)). In doing so, courts must consider (1) whether the contract is oppressive; and (2) whether the contract contains surprise. *Id.* Plaintiff does not argue that the arbitration clause was a "surprise" or that the terms were hidden.[2] (*See* Docket No. 101, at 7-8). Rather, Plaintiff only addresses whether the agreement was oppressive. *Id*. Accordingly, the Court will also only address whether the contract was oppressive.[3]

Courts have defined oppression as springing "from an inequality of bargaining power[that] results in no real negotiation and an absence of meaningful choice." *Circuit City Stores,* 335 F.3d at 1106 (*citing Stirlen v. Supercuts, Inc*., 51 Cal.App.4th 1519, 1532, 60 Cal.Rptr.2d 138, 145 (1997) (internal quotation marks and citations omitted)). Nonetheless, the fact that a mandatory arbitration agreement is a contract of adhesion does not, by itself, render the agreement unenforceable. *Lagatree v. Luce, Forward, Hamilton & Scripps*, 88 Cal. Rptr. 2d 664, 680 (Cal. Ct. App. 1999) (holding that a mandatory arbitration agreement is "not rendered unenforceable just because it is required as a condition of employment or offered on a 'take it or leave it' basis"). Indeed, "the Nevada Supreme Court has held that the contract of adhesion doctrine does not apply to employment cases." *Pruter v. Anthem Country Club, Inc.*, 2013 WL 5954817 (D. Nev. Nov. 5, 2013) (*citing Kindred v. Second Judicial District Court,* 996 P.2d 903, 907 (Nev. 2000)).

---

[2]Surprise is defined as "the extent to which the supposedly agreed-upon terms of the bargain are hidden in the prolix printed form drafted by the party seeking to enforce the disputed terms." *Circuit City Stores,* 335 F.3d at 1106.

[3]It is Plaintiff's burden to show whether the agreement is procedurally unconscionable. *See Andrus,* 2012 WL 5989646.

This principle was recently applied in *Pruter v. Anthem Country Club*. In that case, the plaintiff-employee alleged that she was told by her employer that she would be terminated if she did not sign the arbitration agreement. *Pruter*, 2013 WL 5954817, at *1. Thus, she asserted, "the arbitration agreement was procedurally unconscionable because she lacked a meaningful opportunity to agree to its terms because of unequal bargaining power" and "the agreement [was] a contract of adhesion." *Id.*, at *2. The Court quickly discredited plaintiff's argument on the grounds that the Nevada Supreme Court has held that the contract of adhesion doctrine does not apply to employment cases. *Id*. Thus, the court determined, the arbitration agreement was not procedurally unconscionable.[4] *Id*.

Here, like the plaintiff in *Pruter*, Plaintiff argues that the Arbitration Agreement is oppressive because signing it was a non-negotiable condition of employment. (*See* Docket No. 101, at 7-8). Indeed, the arbitration agreement clearly states that it is a condition of employment. (*See* Docket No. 97-4, at 7). Thus, it was offered on a 'take it or leave it' basis and if the subject plaintiffs failed to signed the agreement, they would not have a job with the company. *Id*. This alone, however, is not sufficient to show that the arbitration agreement is procedurally unconscionable. *See Pruter*, 2013 WL 5954817, at *1. The parties agreed that they were knowingly and voluntarily waiving their rights to pursue arbitrable claims before a judge or a jury in favor of binding arbitration in exchange for employment with the company. Additionally, the parties agreed that the agreement could only be modified in writing. As Plaintiff's only support for the argument regarding procedural unconscionability is that Defendants had all the bargaining power, Plaintiff has not met his burden. *Id*.

**3.  Substantive Unconscionability**

Plaintiff's substantive unconscionability arguments are similarly unpersuasive. A determination of substantive unconscionability "focuses on the one-sidedness of the contract terms" and whether the terms are "oppressive." *D.R. Horton, Inc. v. Green,* 96 P.3d at 1162 (*citing Ting*

---

[4]The Court also addressed whether the agreed-upon terms of the bargain were hidden or misleading and found that they were not. *Id.*, at *2. Plaintiff has not made a similar argument in this case and, additionally, having reviewed the Arbitration Agreement, the Court finds that it was neither hidden nor misleading. *See* Docket No. 97-4.

1 *v. AT & T,* 319 F.3d 1126, 1149 (9th Cir. 2003); *Circuit City Stores, Inc. v. Adams,* 279 F.3d 889, 893 (9th Cir. 2002)). The agreement is unconscionable unless the arbitration remedy contains a "modicum of bilaterality." *Id.*, (*citing Ting v. AT&T*, 319 F.3d 1126, 1149 (9th Cir. 2003). Here, Plaintiff argues that the arbitration clause is an illusory promise and, additionally, it imposes unacceptable costs upon Plaintiffs. (Docket No. 101, at 8-11). Neither of these arguments, however, sufficiently supports a finding of substantive unconscionabiltiy.

### a. Illusory Promise

First, Plaintiff argues that the arbitration clause is an illusory promise because it is part of the employee handbook which can be modified at the sole discretion of Defendants. (Docket No. 101, at 8). Plaintiff has not, however, pointed to a single provision in the arbitration agreement which applies solely to one party or that gives a one-sided advantage to Defendants. *See id*. To the contrary, under the agreement, the arbitrator is mutually selected, either party can demand arbitration, both parties have the right to conduct discovery, and both parties must consent to the disclosure of the content of any arbitration. (*See* Docket No. 97-4). Therefore, while Plaintiff may not have equal bargaining power as Defendants, the arbitration clause is not one-sided like clauses that have been found to be substantively unconscionable. *See, e.g., Circuit City Stores, Inc.*, 279 F.3d at 894 (finding arbitration agreement lacked "modicum of bilaterality" because it imposes obligation to arbitrate only on claims by employees). The arbitration agreement imposes mutual obligations and rights on both Plaintiff and Defendants.

Moreover, although the employee handbook can be modified at the sole discretion of Defendants, the right to alter the terms of the arbitration agreement, as well as all other provisions in the handbook, is limited by the covenant of good faith and fair dealing implied in every contract. *See, e.g. Serpa v. California Sur. Investigations, Inc.*, 215 Cal. App. 4th 695 (Apr. 26, 2013) (finding arbitration provision in employment agreement was not substantively unconscionable, and thus was enforceable, even though the agreement authorized employer to alter the terms of any policy contained in the handbook at its sole discretion at any time). The implied covenant of good faith and fair dealing prevents one contracting party from unfairly frustrating the other party's right to receive the benefits of the agreement actually made. *Id*. Thus, a provision in an agreement permitting one

1 party to modify contract terms does not, standing alone, render a contract illusory because the party
2 with that authority may not change the agreement in such a manner as to frustrate the purpose of the
3 contract. *Id.* Accordingly, Defendants right to modify the handbook is does not render the Arbitration
4 Agreement an illusory promise.

### b. Cost

6 Next, Plaintiff argues that the arbitration clause imposes an unacceptable cost upon Opt-In
7 Plaintiffs because arbitration costs that exceed the costs a party would bear in a conventional lawsuit
8 create substantive unconscionability. (*See* Docket No. 101, at 11).

9 When examining this issue, the Supreme Court of the United States held that the party
10 seeking to invalidate an arbitration agreement on the grounds that arbitration would be prohibitively
11 expensive bears the burden of showing the likelihood of incurring such costs. *Green Tree Fin. Corp.-*
12 *Alabama v. Randolph*, 531 U.S. 79, 92 (2000). Thus, mere supposition about overly burdensome
13 costs is not a sufficient reason to invalidate an arbitration agreement. *Id*. The asserting party must
14 show a likelihood of bearing the overly burdensome costs. *Id*. Further, as the Nevada Supreme Court
15 noted in *D.R. Horton*, "an arbitration agreement's silence regarding potentially significant arbitration
16 costs does not, alone, render the agreement unenforceable" although the "existence of large
17 arbitration costs could preclude a litigant ... from effectively vindicating her ... rights in the arbitral
18 forum." *D.R. Horton*, 96 P.3d at 1165.

19 Here, Plaintiff has not offered any evidence to demonstrate a likelihood of overly
20 burdensome expense. Additionally, the agreement to arbitrate expressly contains a clause allowing
21 the apportionment of costs to be altered in the event the law requires a different allocation of costs
22 to make the Agreement enforceable. Therefore, the Court finds nothing in the Agreement that
23 suggests substantive unconscionablity.

24 **D.  The Arbitration Agreement Applies to all Defendants**

25 Plaintiff argues that the claims against the individual defendants must continue in this Court
26 because individual defendants Raymond Chenoweth and Alan Waxler did not sign the Arbitration
27 Agreement. *Id*., at 16. Nonsignatories of arbitration agreements, however, may be bound by the
28 agreement under ordinary contract and agency principles. *Comer v. Micor, Inc.*, 436 F.3d 1098, 1101

- 17 -

(9th Cir. 2006) (citing *Letizia v. Prudential Bache Securities, Inc.*, 802 F.2d 1185, 1187-88 (9th Cir. 1986)). Among these principles are "1) incorporation by reference; 2) assumption; 3) agency; 4) veil-piercing/alter ego; and 5) estoppel." *Id.* (*citing Thomson-CSF, S.A. v. Am. Arbitration Ass'n*, 64 F.3d 773, 776 (2d Cir. 1995)).

Here, the Complaint alleges that Defendants Alan Waxler and Ray Chenoweth are owners and/or managers of the corporate defendants and, therefore, are liable for paying overtime and breaching contracts. Thus, the individual defendants are agents of the corporate defendants and equally as bound by the arbitration agreement.

E.     **Arbitration Agreements Signed After the Filing of the Lawsuit are Not Void**

It is undisputed that at least six of the Opt-In Plaintiffs signed arbitration agreements after this lawsuit was commenced, but before they filed consents to join the lawsuit. Plaintiff asserts that those individuals should not have to arbitrate their claims because the arbitration agreements were solicited after the lawsuit commenced. Defendants disagree and assert that the lawsuit did not commence for the Opt-In Plaintiffs until they filed their consents to join.

The statutory language is clear. When plaintiffs have filed a "collective action," under § 216(b), all plaintiffs, including named plaintiffs, must file a consent to suit with the court in which the action is brought. *Bonilla v. Las Vegas Cigar Co.*, 61 F. Supp. 2d 1129, 1132-33 (D. Nev. 1999). Although the consents may be filed after the complaint, the action is not deemed commenced with respect to each individual plaintiff until his or her consent has been filed. *Id.* Therefore, the individuals who signed arbitration agreements before filing consents to join this lawsuit are bound by those arbitration agreements.

. . .
. . .
. . .
. . .
. . .
. . .
. . .

**RECOMMENDATION**

Based on the foregoing, it is the recommendation of the undersigned United States Magistrate Judge that Defendants' Motion to Compel Arbitration and Strike Class/Collective Claims (Docket No. 97), should be **GRANTED**. The undersigned recommends that the court dismiss the proceedings as to the 33 individual opt-in plaintiffs who signed arbitration agreements and order the parties to arbitrate those plaintiffs' claims.

DATED this __2nd__ day of January, 2014.

                                          _____
                                          NANCY J. KOPPE
                                          United States Magistrate Judge

**NOTICE**

Pursuant to Local Rule IB 3–2, any objection to this Finding and Recommendation must be in writing and filed with the Clerk of the Court within fourteen (14) days. The Supreme Court has held that the courts of appeal may determine that an appeal has been waived due to the failure to file objections within the specified time. Thomas v. Arn, 474 U.S. 140, 142 (1985). This circuit has also held that (1) failure to file objections within the specified time and (2) failure to properly address and brief the objectionable issues waives the right to appeal the District Court's order and/or appeal factual issues from the order of the District Court. Martinez v. Ylst, 951 F.2d 1153, 1157 (9th Cir.1991); Britt v. Simi Valley United Sch. Dist., 708 F.2d 452, 454 (9th Cir.1983).